**Frederick BUTLER, Thomas Green, Regie Stevens, and Mohammed Warsame, Individually and as Class Representatives, Plaintiffs,**

v.

**MATSUSHITA COMMUNICATION INDUSTRIAL CORPORATION OF U.S.A., a Delaware Corporation, and Matsushita Electric Corporation of America, a Delaware Corporation, Defendants.**

Civ.A. No. 3:00–CV–131–JTC.

United States District Court,
N.D. Georgia,
Newnan Division.

Sept. 20, 2001.

Ann Margaret Pointer, Gary E. Thomas, and Kenneth J. Barr, Fisher & Phillips, LLP, Atlanta, GA, for defendants.

Jeffrey O. Bramlett, Joshua F. Thorpe, Steven Rosenwasser, Bondurant, Mixson & Elmore, Michael E. Kramer, Terence Thomas, Kramer & Thomas, Atlanta, GA, Robert F. Childs, Jr., Samuel Fisher, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiffs.

## ORDER

CAMP, District Judge.

This case is before the court on Defendants' Motion to Dismiss [# 20–1] and Defendants' Motion for a More Definite Statement [# 20–2].

## BACKGROUND

Plaintiffs Frederick Butler, Thomas Green, Regie Stevens, and Mohammed Warsame have sued individually, and on behalf of a class, Defendants Matsushita Communication Industrial Corporation of U.S.A. ("MCUSA") and Matsushita Electric Corporation of America ("MECA"), for a multitude of employment discrimination claims. Plaintiffs have alleged class-wide discrimination in pay and promotions that have injured the class of African–American employees of Defendant. Specifically, Plaintiffs have alleged (1) intentional discrimination against the class and the named Plaintiffs on the basis of race in violation of Title VII; (2) intentional discrimination against the class and the named Plaintiffs on the basis of race in violation of § 1981; (3) racially disparate impact against the class and the named Plaintiffs in violation of Title VII; and (4) unlawful retaliation against Butler, Stevens, and Green.

Defendants ask this Court to "narrow the issues" by dismissing Green as a party to the lawsuit, limiting the claims which might be raised, and requiring Plaintiffs to set forth their retaliation claims with more particularity under Fed.R.Civ.P. 12(e).

### Butler

Frederick Butler is a black male who has worked at MCUSA for over 12 years. According to Butler he has received only one promotion in this time. Butler was hired as a Technician B in 1988. He claims that he performed his job well and was given extra responsibility beyond that of a Technician B. In 1991 and 1993 he tried to obtain a promotion to Technician A, but was denied, he claims because of his race. In 1995 Butler applied for two different training positions. He claims he was qualified for both positions and familiar with the products involved. Butler alleges that he had superior experience, and at least the same, if not superior educational qualifications, as the white men given the jobs. On October 12, 1995, Butler filed a charge of race discrimination against MCUSA with the EEOC for discrimination in promotional opportunities. He claims that since filing this charge he Has been subjected to retaliatory harassment, including negative performance evaluations, and improper claims of disciplinary infractions. He gives no further details of the claimed retaliation.

Butler was promoted in April of 1996 to the position of Associate Engineer. Butler alleges that a white employee performing "the same basic job" as Butler and who had the same educational qualifications, was

earning $10–15,000 more than Butler. He also claims that as an Associate Engineer he was paid less in his starting salary than white employees starting in the same position with less education. Butler believes this disparity in compensation is based on his race.

Sometime in 1997, Butler applied for the position of Quality Representative. The job was awarded to a white male who had the same educational qualifications, but less experience than Butler. In October of 1998, Butler learned that a white male named Tim Davis was promoted to Manager of Digital Business Systems. Butler alleges that though he was more qualified than Davis for the job, he was never given the opportunity to compete for it because the job was never posted. Butler alleges that he was denied the opportunity to compete for the position based on his race.

In April of 1999, Butler learned of another white male receiving a promotion for a job that was not posted, for which Butler believes he was qualified. Again, Butler had higher educational qualifications than the person awarded the job. Butler alleges that he asked his supervisor how he could get promoted and she suggested that he get a bachelor's degree. This qualification, according to Butler, was not required of white employees.

In October of 1999, and April of 2000, white employees were promoted to jobs that were not posted. Butler claims that he had more experience and better educational qualifications than the white employees promoted. Butler claims that he was denied the opportunity to compete for these positions because of his race.

### Green

Thomas Green is an African–American male who worked at MCUSA from April 1990 to August 1998. He claims that during his employment he applied for two promotions to posted positions but did not receive either, though he was more qualified than the white males given the jobs. He also claims that there were other higher positions for which he was qualified, but unable to compete for, because the jobs were never posted. He claims these jobs were awarded to less qualified white employees.

Prior to working for MCUSA, Green was a pager technician for General Communications for four years. He also worked another shift at this same time for Contactos Communication repairing transmitters and receivers. At MCUSA, he worked in the cellular/pager group as a CMT. He claims that he was given extra responsibilities beyond those performed by other CMTs. Green was not promoted in the eight years he worked for MCUSA.

In 1995, two positions were posted for Cellular Trainer and Pager Trainer. Green believes he was qualified for both positions because he had a background in cellular and pager products due to his work with General Communications. He applied and interviewed for both positions. Green claims that he was denied both of these positions based on his race. The Cellular Trainer position was awarded to a white male with less experience and educational qualifications than Green. The Pager Trainer position, was not awarded to anyone. When Green inquired as to why the position was not filled, he was told by Ms. Brown from Human Resources, that there was no one qualified within the company. On Green's interview form, however, it was written that Green was the most qualified candidate for the position. The job was posted again, and awarded to a white male. This individual was on 12–months probation for rejecting a prior position, meaning that he should not have been qualified to take this position. Green believes that he was denied this promotion on the basis of his race.

Green further alleges that two training positions, and four supervisory positions were never posted, but were awarded to white men during Green's employment with MCUSA. He believes he was denied the opportunity to compete for these positions based on his race. On September 11, 1995, Green filed a charge with the EEOC against MCUSA alleging race discrimination. After receiving a right to sue letter, however, Green did not file a complaint against MCUSA. He assisted Butler in filing an EEOC charge on October 12, 1995. Green alleges that he was told by an EEOC employee that

he did not have to sign Butler's charge because only Butler's signature was needed to preserve the claims for the class. Green also claims that after filing charges of discrimination, Defendants subjected him to retaliatory discrimination including further exclusion from promotions.

**Stevens**

Regie Stevens is an African–American male who has worked at MCUSA from 1990 to the present. He began as a Quality Assurance Technician B in the Car Audio Department. In 1997, he was promoted to Technician A. This is the only promotion he has received in ten years. Stevens claims he has applied for approximately 15 promotions, and although he has received good evaluations, other than the promotion from Tech–B to Tech–A, he has not been promoted.

In 1994 Stevens first bid for the Tech–A position. He claims the job was awarded to a white employee with less experience. Stevens believes he was denied this promotion because of his race. He was advised to take an Excel computer course to enhance his promotion chances. He claims that white employees did not have to take this course to be promoted.

In 1997 Stevens again was denied a promotion to Tech–A, and believes that he was more qualified than the white employee given the job. Stevens claims there have been many positions, both posted and unposted, for which he was qualified, that were awarded to less qualified white employees. Many of the unposted positions are the same positions mentioned under Green's allegations. Stevens believes he was denied these positions because of his race. Stevens participated in the October 12, 1995 EEOC charge filed by Butler. As a result, he claims he has been subjected to retaliatory harassment by Defendants. The complaint includes no details of the alleged retaliatory harassment.

**Warsame**

Mohammed Warsame is an African–American male who has been employed by MCUSA since 1995. Warsame has applied for five promotions since 1996. Though he claims he was qualified for all of them, he was not promoted. There have also been other posi-

tions, for which he was qualified, that were not posted and were awarded to less qualified white employees.

Warsame has a B.S. degree in Industrial Technology Manufacturing and Telecommunications from California State University. He also has a B.S. in Telecommunications obtained in Odessa, Russia.

Sometime in 1997 he applied for a promotion to Quality Control. The complaint does not say whether or not he was awarded the position. In 1998 he applied for a second promotion, a supervisory position. No interviews were conducted and MCUSA withdrew the position without filling it. In 1999, Warsame learned that two engineering positions for which he was qualified were awarded to less qualified Caucasians. These positions were not posted. When Warsame complained that the jobs were never posted Personnel assigned him to a recruiter. Warsame claims that the recruiter never called him. In June of 2000 Warsame applied for an opening for Senior Electronic Technician. He was informed that he would be contacted to set up an interview. He did not hear back, and was later informed that the position had been filled. Warsame also alleges several "personal observations" (1) African–American employees hired on a temporary basis are not hired when the position is converted to a permanent one; (2) white employees are given benefits that black employees are not, such as permission to begin work ½ hour earlier in order to leave ½ hour earlier; (3) black employees are disciplined for infractions that white employees are not disciplined for.

Warsame believes he was denied positions on the basis of his race, excluded from promotions for unposted positions on the basis of his race, and discriminated against on the basis of his race in the terms and conditions of his employment.

**DEFENDANT'S MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT**

Defendant's Motion to Dismiss can be broken down into three arguments: (1)all claims in the complaint that are outside the scope of the EEOC charge should be dismissed; (2)all

claims that are time barred should be dismissed; and (3)all claims that are insufficiently pled should either be repled with particularity or dismissed.

**Scope of EEOC Charge**

Butler's EEOC charge alleges that Butler was discriminatorily denied promotional opportunities on the basis of his race. It also alleges that "blacks, as a class, are being discriminated against with regard to promotional opportunities above and beyond the Tech A level." (*Pl.'s Response to Def.'s Mot. to Dismiss Ex. 3*). The determination letter issued by the EEOC states that "examination of the Respondent's records reflect that the Respondent routinely denied black employees the opportunity to promote to positions at the Technician A level and above." (*Complaint Ex. A*). It also states that "reasonable cause exists to believe black employees were discriminated against because of their race, with regard to promotional opportunities." *Id.*

Defendants argue that the complaint alleges inappropriate new acts of discrimination not reasonably related to the EEOC charge, such as discriminatory transfer, compensation, benefits, other types of promotions, other terms and conditions of employment, retaliation, and disparate impact. Furthermore, Defendants argue that because these claims were not raised in the EEOC charge, and are not reasonably related to the denial of promotion claims that were raised, they should be dismissed.

Plaintiffs argue that the EEOC charge alleged on-going classwide discrimination suggesting all forms of discrimination alleged in the complaint. In addition, because these claims are reasonably related to those raised in the EEOC charge, and because the court is required to construe such a charge with liberality, these claims are properly before the Court.

■ "The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." *Eastland v. Tennessee Valley Authority,* 714 F.2d 1066, 1067 (11th Cir.1983). "The court may also consider any type of discrimination that is 'like or related' to the

EEOC charge or that grows out of the EEOC investigation." *Jackson v. Matsushita,* 1:99–CV–2666–JTC, 18 (N.D.Ga. Apr. 12, 2000)(adopted by Court's Sept. 19, 2000 Order). *See Waldemar v. American Cancer Society,* 971 F.Supp. 547, 553 (N.D.Ga.1996) ("Claims omitted from the EEOC charge may still be litigated when 'reasonably related' to those claims brought in the EEOC charge."); *Plaisance v. Travelers Insurance Company,* 880 F.Supp. 798, 806 (N.D.Ga. 1994) ("[T]he scope of a complaint is not to be extended beyond the scope of the 'EEOC investigation which can reasonably be expected to grow out of the charge of discrimination' "). Therefore, if the claim is not raised in the EEOC charge and is not "reasonably related", it is precluded from the Court's consideration. *Waldemar,* 971 F.Supp. at 553.

The underlying reason for this is that "Congress wanted the EEOC to have an opportunity to investigate and attempt conciliation of all claims before litigation was brought." *Clark v. City of Macon, Georgia,* 860 F.Supp. 1545, 1551 (M.D.Ga.1994). *See Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970). "Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action . . ." *Id.* "Thus, raising a particular claim at the administrative level is a condition precedent to filing suit on the claim." *Clark,* 860 F.Supp. at 1551.

■ Here, Plaintiffs' charge only alleges discrimination in promotional decisions above the Technician A level. The investigation by the EEOC also only involved promotional decisions, as evidenced by their determination letter. The complaint, however, alleges discriminatory transfers, compensation, benefits, other types of promotions, other terms and conditions of employment, retaliation, and disparate impact. The Court must determine whether these claims are sufficiently "like or related" to the discriminatory denial of promotion claims alleged in the EEOC charge. The "like or related" requirement has been described by the Eleventh Circuit Court of Appeals:

As long as allegations in the judicial complaint and proof are "reasonably related"

to charges in the administrative filing and "no material differences" between them exist, the court will entertain them...Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEOC complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested relief are not appropriate.

*Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989). *See also Murray v. John D. Archbold Memorial Hospital, Inc.*, 50 F.Supp.2d 1368, 1381 (M.D.Ga.1999) (Although plaintiffs correctly assert that they "need not use any particular terms to describe [their] claim of discrimination or to identify the legal theory underlying [their claim]" the "like or related" doctrine "does require an aggrieved party to allege facts that fairly notify the defendant of the nature of the claim of discrimination").

The claims of discriminatory transfer, compensation, benefits, and other terms and conditions of employment alleged in Plaintiffs' complaint are not reasonably related to the claims of discriminatory denial of promotion alleged in Butler's EEOC charge. Material differences exist between denial of a promotion and denial of a benefit or a higher wage. *See Buffington v. General Time Corp.*, 677 F.Supp. 1186, 1192 (M.D.Ga.1988) (finding that plaintiff's charge of unlawful transfer was not reasonably related to allegations in complaint of age discrimination and failure to promote); *Clements v. H. Goodman & Sons*, 25 Fair Empl.Prac.Cas. (BNA) 511, 512–13 (N.D.Ga.1981) (finding that plaintiff's charge alleging unlawful discharge not reasonably related to later raised claims of failure to promote and failure to transfer). In addition, these issues were not investigated by the EEOC. Because the issues of discriminatory transfer, compensation, benefits, and other terms and conditions of employment are not reasonably related to the charges in the EEOC complaint, they exceed the scope of the EEOC complaint and investigation, and are dismissed. Because the denial of promotions was raised in the EEOC charge and was investigated by the EEOC, all timely promotional decisions are reasonably related and properly before the Court.

■ Defendant has argued that any promotion claims arising after the October 12, 1995 charge filing should be dismissed as outside the scope of the charge because Plaintiffs failed to amend the charge to include them. As has already been stated, "the scope of a complaint is not to be extended beyond the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Plaisance*, 880 F.Supp. at 806. Because the original charge alleged discriminatory denials of promotions, the investigation into MCUSA could reasonably be expected to include investigation of future denials of promotions as long as the case was still pending before the EEOC. *Turner v. Orr*, 804 F.2d 1223 (11th Cir.1986)(holding that denial of a promotion during the pendency of an investigation regarding other discriminatory promotions was within scope of EEOC charge). Here, the EEOC determination letter was issued December 21, 1999. Therefore, any claims of discriminatory promotion up to that date grew out of the original charge and investigation, and are therefore within the scope of the charge. Any Title VII claims after that date, however, are not within the scope. In other words, Plaintiff Butler's claims of discriminatory denial of promotion in violation of Title VII in April of 2000 and Warsame's similar claim in June of 2000 are dismissed as outside the scope of the EEOC charge.

■ As for Plaintiffs' retaliation claims, though they were not raised in the EEOC charge, they can still be found to be reasonably related if the retaliation is based on the filing of the charge itself. "[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir.1981). "When the allegations...involve conduct committed subsequent to the filing of an EEOC charge, it is reasonably related to the charged conduct when...the claim is one alleging retaliation against the employee for filing an EEOC charge..." *Buzzi v. Gomez*, 62 F.Supp.2d 1344, 1352 (S.D.Fla.1999). Plaintiff's have alleged that the retaliation took place after Butler filed a charge with the EEOC in

which they participated. *(Complaint ¶ 37, 80, 93)*. Therefore, the claims of retaliation are reasonably related to the charge and are properly before this Court.

■ Defendants also argue that Plaintiffs' disparate impact claims are outside the scope of the EEOC charge. A claim of disparate impact is made when the Plaintiff is challenging a facially neutral policy of the employer's, that when applied results in a disparate impact on a particular group. *EEOC v. Joe's Stone Crab. Inc.*, 220 F.3d 1263 (11th Cir.2000). The necessary elements to a disparate impact claim are: (1) a significant statistical disparity between the proportion of a statutorily protected group in the relevant labor pool and the proportion of that group hired; (2) a specific facially-neutral employment practice which is the cause of the disparity; and (3) a causal nexus between the specific employment practice identified and the statistical disparity shown. *Id.* at 1274.

■ Butler's charge did not mention the words "disparate impact", nor did it refer to any facially neutral policy. In fact, Butler's charge alleged only intentional discrimination. The determination letter issued by the EEOC concluded that reasonable cause existed to believe that black employees were discriminated against because of their race. This language also refers to intentional discrimination not a neutral policy. It is not reasonable to expect the EEOC to investigate any neutral employment policy when all that is raised is intentional discrimination. *Murray*, 50 F.Supp.2d 1368 (holding that Plaintiff's disparate impact claim is not "like or related" to the claim of race discrimination alleged in the EEOC charge). Because the charge and the investigation dealt only with intentional discrimination, and not a facially neutral employment policy, the Plaintiffs' claim of disparate impact is not reasonably related to the charge or investigation. Therefore it exceeds the scope of the EEOC charge and is dismissed [1].

1. Defendants also argue that Plaintiffs' disparate impact claim should be dismissed because it was insufficiently pled. This argument will not be

**Statute of Limitations**

■ Defendants have moved to dismiss the majority of Plaintiffs' claims, alleging that they are barred by the applicable statute of limitations. A Title VII litigant must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act. *See e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234(1982); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992 (11th Cir.1982). Title VII states that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred..." 42 U.S.C. § 2000e–5(e). In the Eleventh Circuit a plaintiff's claims are barred if not filed with the EEOC within 180 days of the discriminatory act. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir.1993). Plaintiff Butler filed a charge with the EEOC on October 12, 1995. Therefore, Title VII claims raised in the complaint occurring before April 15, 1995 are time-barred, unless the statute of limitations is waived. In other words, Plaintiff Butler's claims of discriminatory denial of promotion in violation of Title VII in 1991, and 1993, and Plaintiff Stevens' similar claim in 1994 are dismissed.

"With respect to Section 1981, the Supreme Court has characterized such a claim as a personal injury cause of action and found state statute of limitations for personal injury actions applicable to these federal claims...The applicable statute of limitations...is found in O.C.G.A. 9–3–33 and is 2 years." *Jackson v. Matsushita*, 1:99–CV–2666–JTC, 10 (N.D.Ga. Apr. 12, 2000)(adopted by Court's Sept. 19, 2000 Order). This case was filed October 31, 2000. Therefore, unless the statute of limitations is waived, any § 1981 claims that arose before November 1, 1998 are barred. In other words, Plaintiff Butler's claims of discriminatory denial of promotion in violation of § 1981 in 1991, 1993, 1995, 1997, and October of 1998, Plaintiff Stevens' similar claims in 1994, and 1997, and Plaintiff Warsame's similar claim in 1997, are dismissed.

addressed, because the Court is dismissing the claim as outside the EEOC charge.

■ Plaintiffs argue that these claims are not time barred because the continuing violation doctrine should be applied. The continuing violation doctrine preserves otherwise time barred acts that have a substantial nexus to timely asserted acts. *Robinson v. Caulkins Indiantown Citrus Co.*, 701 F.Supp. 208 (S.D.Fla.1988). This doctrine prohibits an employer who has continuously maintained an illegal employment policy or · has committed a series of discrete acts amounting to a practice of discrimination from relying on the statute of limitations to bar suits as long as at least one discriminatory act occurred within the required time period. *See Lewis v. Board of Trustees of Alabama State University*, 874 F.Supp. 1299, 1303 (M.D.Ala.1995).

■ The continuing violation doctrine rests on the notion that "the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1222 (11th Cir.2001)(*quoting, Alldread v. City of Grenada*, 988 F.2d 1425, 1432 (5th Cir.1993)). This does not mean that a plaintiff may use this doctrine to save his claim after knowingly allowing the statute of limitations to run. "A claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the 180–day limitation period." *Roberts v. Gadsden Memorial Hospital*, 850 F.2d 1549, 1550 (11th Cir.1988), *modifying*, 835 F.2d 793 (11th Cir.1988).

In determining continuing violation, the Court asks, would this event or series of events "alert a reasonable person to act to assert his or her rights at the time of the violation." *Hipp*, 252 F.3d at 1222. In other words, "whether the act was sufficiently permanent in nature to 'trigger an employee's awareness of and duty to assert his or her rights.'" *Watson v. Bally Manufacturing Corporation*, 844 F.Supp. 1533, 1535 (S.D.Fla.1993) (*quoting, Berry v. Board of Supervisors of L.S.U.*, 783 F.2d 1270, 1273 (5th Cir.1986)).

■ Here the suit generally alleges a "continuing" "pattern and practice of discrimination against African–American employees in the awarding of job opportunities." (*Complaint ¶ 24*). All of the claims involved are for denial of promotions or denial of the opportunity to compete for such promotions. An obvious and final decision was made each time one of the Plaintiffs was denied a promotion. The facts supporting a cause of action for discriminatory denial of promotion were present each time a decision was made. The permanent nature of each separate promotional decision should have alerted the Plaintiffs that their rights were being violated. In addition, it seems apparent that the Plaintiffs here did in fact believe their rights were being violated. Throughout the complaint, when it alleges a discriminatory denial of promotion, it also alleges that the Plaintiff thought he was more qualified than the person awarded the job. (*Complaint ¶¶ 33, 34, 43; 47, 53, 55, 74, 75, 88, 90*). As already stated, a plaintiff who knowingly fails to seek relief is exactly the danger Congress was trying to protect against in establishing the statute of limitations. This court cannot allow Plaintiffs to save their time barred claims by claiming a continuing violation. Plaintiffs have failed to establish a continuing violation, therefore any Title VII claims prior to April 15, 1995, and any § 1981 claims prior to November 1, 1998 are time barred and are dismissed.

As for Plaintiff Green's claims, the Court has already stated that the statute of limitations for § 1981 claims is two years, and that the Defendants alleged violations do not constitute a continuing violation. Therefore, all of Green's § 1981 claims are dismissed as they are necessarily prior to November 1, 1998 because he ceased working for Defendant in August of 1998.

### Green's Failure to File Suit

With respect to Green's Title VII claims, Defendants argue that Green cannot "piggyback" on Butler's EEOC charge because Green filed an EEOC charge of his own. Green filed an EEOC charge of race discrimination against MCUSA on September 11, 1995. The EEOC issued Green a right to sue letter, but he neglected to file suit within

90 days as required. Plaintiffs argue that Green can rely on Butler's EEOC charge under the "single filing" rule and the equitable tolling doctrine. Green alleges that he reasonably relied on an EEOC employee who told him he did not have to pursue his individual claims of discrimination because Butler's charge would preserve the claims for the whole class.

The rule in the Eleventh Circuit is that "where a plaintiff has filed an individual EEOC charge, such a plaintiff should be required to rely upon his or her own EEOC charge, and cannot reasonably rely upon the other claimant's charge." *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554 (11th Cir.1997). "[W]here the party wishing to piggyback has filed his own charge" that party is "bound by the parameters of his own EEOC charge and cannot subsequently utilize the single filing rule to avoid the statute of limitations." *Mooney v. Aramco Services*, 54 F.3d 1207, 1223–24 (5th Cir.1995). Because Green filed his own EEOC charge he can not "piggyback" on Butler's charge.

Equitable tolling of a *claim* is possible when the plaintiff has relied on incorrect information from an administrative agency. *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1393 (11th Cir.1998). Equitable tolling can extend the statute of limitations. The Court knows of no case law, however, allowing a plaintiff to use equitable tolling in order to circumvent the above stated rule that one who files an EEOC charge must rely on his own charge. Because Green cannot piggyback on Butler's charge or use equitable tolling in this situation, his claims are untimely and are dismissed. Because Green has no viable claim, he is dismissed as a party to the lawsuit.

### Deficiency in Pleading

Defendants argue that Plaintiffs' retaliation claims are deficient under Fed. R.Civ.P. 12(e). "The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small-the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed..." 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Civil Procedure, Civil 2d. § 1376. Plaintiffs' complaint is intelligible. It is clear that the legal theory Plaintiffs are trying to establish is retaliation. However, Rule 8(a) of the Federal Rules of Civil Procedure requires Plaintiffs to submit a "short and plain statement of the claim showing that the pleader is entitled to relief." This requirement insures that Defendant is given fair notice of the claim and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Plaintiffs have not satisfied these requirements in regard to their retaliation claims. In order to state a claim of retaliation, Plaintiffs must show that (1) they engaged in protected activity; (2) they suffered an adverse employment action; and (3) they can establish a causal connection between the two. *Holifield v. Reno*, 115 F.3d 1555, 1556 (11th Cir.1997). Plaintiffs have not sufficiently alleged facts supporting an adverse employment action or a causal connection. Therefore, Defendants have not been given fair notice of the claim so as to enable them to answer and prepare for trial. Accordingly, Plaintiffs are given leave to amend Count Four of Plaintiffs' Complaint within twenty (20) days after entry of the Court's Order.

### Conclusion

Defendants' Motion to Dismiss is **GRANTED** in part, and **DENIED** in part. Plaintiff Green is **DISMISSED** as a party to the lawsuit because he has no viable claims. All Title VII claims that occurred before April 15, 1995, and all § 1981 claims that occurred before November 1, 1998 are **DISMISSED**. All claims which exceed the scope of Butler's EEOC charge, such as the claims for discriminatory transfer, compensation, benefits, other terms and conditions of employment, and disparate impact are **DISMISSED**. Defendants' Motion for a More Definite Statement is **GRANTED**. Plaintiffs are **GRANTED leave to amend** within twenty (20) days after entry of the Court's Order, Count Four of Plaintiff's Complaint.